RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0256p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
———————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 12-3433

DEMARIO DENSON,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:12-cr-00021-1—James S. Gwin, District Judge.

Decided and Filed: August 29, 2013

Before: MOORE, KETHLEDGE, and STRANCH, Circuit Judges.

———————————————

## COUNSEL

**ON BRIEF:** Brian R. McGraw, Cleveland, Ohio, for Appellant. Duane J. Deskins, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

———————————————

## OPINION

———————————————

JANE B. STRANCH, Circuit Judge. Demario Denson's sentencing appeal presents two issues. The first is whether a conviction for inciting to violence, *see* Ohio Rev. Code § 2917.01(A), is a crime of violence under the career-offender provisions of the sentencing guidelines. We hold that it is not, but that the facts of Denson's conviction necessarily establish that the species of incitement to which he pled guilty is a crime of violence. The second question is whether the district court erred when it declined to apply an acceptance-of-responsibility adjustment based on a presentence

1

report that showed Denson was charged with a new state firearm offense while awaiting sentencing in this case. We conclude that it did not. As a result, we **AFFIRM**.

## I. BACKGROUND

Demario Denson was indicted in January 2012 on a charge of being a felon in possession of a firearm. *See* 18 U.S.C. § 922(g)(1). One month later, Denson was detained again for allegedly supplying a shotgun to a police informant who planned to commit a robbery. Denson pled guilty to the felon-in-possession charge in February 2012.

Denson's probation officer prepared a presentence investigation report for his sentencing on the earlier charge. The report identified two prior state felony convictions that increased the base-offense level used to calculate Denson's guidelines range because they were crimes of violence. *See* U.S.S.G. §§ 2K2.1(a)(2), 4B1.1, 4B1.2. Denson objected to the inclusion of an Ohio conviction for inciting to violence as a predicate crime of violence, *see* Ohio Rev. Code § 2917.01(A), arguing that the incitement statute could be violated without any violence actually occurring. The district court overruled the objection. It reasoned that the Ohio incitement statute meets the career-offender guideline's requirement that a qualifying prior offense must contain "the use, attempted use, or threatened use of physical force against the person of another" as an element because the threatened use of violence is sufficient to commit the state crime. *See* U.S.S.G. § 4B1.2(a)(1). The court thus concluded that Denson's incitement conviction constituted a crime of violence under the career-offender guideline.

The district court also rejected Denson's argument that his sentencing range should be reduced because Denson accepted responsibility for his crime. *See* U.S.S.G. § 3E1.1. Denson contended that he was "cloaked with the presumption of innocence" with respect to the unadjudicated shotgun-supplying charge, which the court should not consider against him. Finding it "hard to imagine something" that could "negate[]" Denson's acceptance of responsibility more than another firearm offense involving the sale of a shotgun to a would-be felon, the court declined to apply the reduction.

The district court sentenced Denson to a 72-month term of imprisonment.

## II.  ANALYSIS

Denson appeals two facets of the calculation of his sentence, which we review pursuant to 28 U.S.C. § 1291.  First, he contends that his Ohio felony conviction for inciting to violence is not a crime of violence under the career-offender guideline.  Second, Denson argues the district court improperly denied the acceptance-of-responsibility reduction he requested.

### A.  Crime of violence

Two baseline rules guide our analysis.  First, we review de novo a district court's determination that a prior conviction is a crime of violence.  *United States v. Wynn*, 579 F.3d 567, 570 (6th Cir. 2009).  Second, we analyze a crime of violence under the career-offender guideline just as we do a "violent felony" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), and so rely on ACCA cases here.  *United States v. Johnson*, 707 F.3d 655, 659 n.2 (6th Cir. 2013).

Under the guidelines, "any offense under federal or state law" for which an offender can be imprisoned for more than one year is a crime of violence if it (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another," U.S.S.G. § 4B1.2(a)(1); (2) is burglary of a dwelling, arson, extortion, involves the use of explosives, *id*. § 4B1.2(a)(2), or is "one of the crimes specifically enumerated in Application Note 1 to the career offender guideline," *United States v. Rodriguez*, 664 F.3d 1032, 1036 (6th Cir. 2011); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another," U.S.S.G. § 4B1.2(a)(2).

A sentencing court applies a "categorical" approach to determine the nature of a prior conviction, which means that it focuses on the statutory definition of the offense, rather than the manner in which an offender may have violated the statute in a particular circumstance.  *Sykes v. United States*, 131 S. Ct. 2267, 2272 (2011).  Even when there is "little doubt" that the circumstances of a defendant's violation were violent, "the

question is whether [the statute he violated], as a categorical matter," is a crime of violence. *Id*.

Courts use "a variant of this method—labeled (not very inventively) the 'modified categorical approach'—when a prior conviction is for violating a so-called 'divisible statute,'" which "sets out one or more elements of the offense in the alternative." *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). The modified-categorical approach is a "tool" used in a "narrow range of cases" to "identify the relevant element" of which a defendant was necessarily convicted if—and only if—his conviction was under "a statute with multiple alternative[]" elements. *Id.* at 2287 (internal quotation marks omitted). So where a prior conviction was under a statute that "could be violated in a way that would constitute a crime of violence and in a way that would not," *United States v. Rede-Mendez*, 680 F.3d 552, 556 (6th Cir. 2012), we may "consult a limited class of documents . . . to determine which alternative [element] formed the basis of the defendant's prior conviction," *Descamps*, 133 S. Ct. at 2281 ; *see also Shepard v. United States*, 544 U.S. 13, 16–17 (2005). Where the defendant has pled guilty, these so-called *Shepard* documents may include the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard*, 544 U.S. at 16. The point of the modified-categorical inquiry is to determine "whether the court documents establish that the defendant 'necessarily admitted' the elements of a predicate offense through his plea." *United States v. Medina-Almaguer*, 559 F.3d 420, 423 (6th Cir. 2009) (quoting *Shepard*, 544 U.S. at 16).

### 1.  Categorical analysis of Ohio's inciting-to-violence statute

Ohio law defines the crime of inciting to violence as "knowingly engag[ing] in conduct designed to urge or incite another to commit any offense of violence" if the conduct either "takes place under circumstances that create a clear and present danger that *any* offense of violence will be committed" or "proximately results in the commission of *any* offense of violence." Ohio Rev. Code § 2917.01(A) (emphasis added).

The first question is whether the incitement statute "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1). It does not. While the statute says that a defendant must do something designed to urge another to commit "any offense of violence," Ohio law is clear that an "offense of violence" does not categorically entail the use of physical force. Section 2901.01(A)(9) of the state's Revised Code provides the general definition of the term "offense of violence" as it is used in Ohio's statutes, and sets forth assorted categories of qualifying offenses. These include acts "committed purposely or knowingly, and involving physical harm to persons or a risk of serious physical harm to persons." Ohio Rev. Code § 2901.01(A)(9)(c). And they also include nearly three dozen enumerated offenses, *see id.* § 2901.01(A)(9)(a), and their "substantially equivalent" analogs found in federal law or the law of any state, *id.* § 2901.01(A)(9)(b). While many of the enumerated offenses include a use-of-physical-force element—take as examples murder, *id.* § 2903.02, rape, *id.* § 2907.02, and robbery, *id.* § 2911.02—several do not—such as threatening non-physical harm to influence or hinder a public official in the discharge of his duties, *id.* § 2921.03, and failing to return to detention, *id.* § 2921.34. So while a conviction under § 2917.01(A) *may* involve the use of physical force in the underlying "offense of violence," it does not do so as a categorical matter because it may rest on an "offense of violence" that requires none.

That Ohio's legislature chose to include the word "violence" in naming the offense and elaborating an element of it that sounds like it involves the use of physical force does not change matters. "[A] specific offense [does not] automatically qualify as a crime of violence just because it has the same name as one of the enumerated offenses" under § 4B1.2(a)(1) of the guidelines. *Rede-Mendez*, 680 F.3d at 556. So too a state offense does not automatically qualify as a crime of violence merely because its title includes the word "violence" or an element of it is denominated an "offense of violence"—particularly where that element sweeps in a broad range of violent and non-violent conduct. Such a statute is overbroad in a categorical analysis of the use-of-physical-force prong. And this overbreadth is not cured because the statute invokes

magic words that suggest physical force, but in fact proscribe conduct in which physical force plays no part.

Moreover, to conclude that an incitement conviction necessarily includes use of physical force because the statute speaks in terms of an "offense of violence" impermissibly ignores "the Ohio courts' interpretation of its own state law, including the elements of a crime," which is binding upon us. *Rodriguez*, 664 F.3d at 1037 (citing *Johnson v. United States*, 559 U.S. 133, 138 (2010)); *but see Descamps*, 133 S. Ct. at 2291 ("We may reserve the question whether, in determining a crime's elements, a sentencing court should take account not only of the relevant statute's text, but of judicial rulings interpreting it."). Ohio's legislature "enumerated those infractions which constitute offenses of violence" in § 2901.01(A)(9), any one of which can sustain an incitement conviction. *State v. Mosley*, 624 N.E.2d 297, 301 (Ohio Ct. App. 1993) (per curiam); *State v. Turner*, 2007-Ohio-5449, at ¶¶ 80–81 (Ohio Ct. App. Oct. 11, 2007). Because some of those enumerated offenses include a use-of-physical-force element while others do not, the answer to the question of whether the incitement statute has as an element the use of physical force—actual, attempted, or threatened—is no.

The next question is whether inciting to violence is among the covered crimes listed in the career-offender guideline. Incitement is not burglary of a dwelling, arson, extortion, or a crime that involves the use of explosives. U.S.S.G. § 4B1.2(a)(2). Nor is it "one of the crimes specifically enumerated in Application Note 1 to the career offender guideline." *Rodriguez*, 664 F.3d at 1036.

The final question is whether incitement fits into the residual clause of the career-offender guideline because it necessarily "involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a)(2). Though its language is broad, the residual clause "is not intended as a catch-all provision" and covers only crimes similar to the four enumerated offenses that textually precede it. *United States v. Benton*, 639 F.3d 723, 731 (6th Cir. 2011). Those offenses "illustrate the kinds of crimes that fall within the [guideline's] scope"; they make plain that the residual clause does not embrace "every crime that 'presents a serious potential risk of

physical injury to another.'"  *Id*. (quoting *Begay v. United States*, 553 U.S. 137, 142 (2008)).

After the Supreme Court decided *Begay* in 2008, we developed a two-part inquiry to analyze whether an offense qualifies as a crime of violence under the residual clause.  First, we ask, "does the crime present a serious potential risk of violence akin to the listed crimes?"  *United States v. Ford*, 560 F.3d 420, 421 (6th Cir. 2009) (citation omitted).  And, second, "does the crime involve the same kind of 'purposeful, violent, and aggressive conduct' as the listed crimes?"  *Id.* (quoting *Begay*, 553 U.S. at 144–45).  Three years later, however, the Supreme Court suggested that *Begay*'s "purposeful, violent, and aggressive conduct" standard, embedded in the second part of our circuit's test, may be redundant with the comparable-risk-level inquiry.  *Sykes*, 131 S. Ct. at 2275–76.  *Sykes* reasoned that *Begay* used "the purposeful, violent, and aggressive formulation" to explain the result in a case that "involved a crime akin to strict liability, negligence, and recklessness crimes"; because the felony at issue in *Sykes* was not one of those, the Court applied only the comparable-risk-level inquiry.  *Id*. at 2276.

As the language in *Sykes* limiting *Begay* is not mandatory, we have continued to apply the two-part test in some residual-clause cases, and have chosen to exclude the *Begay* question in others.  *Compare United States v. Stafford*, 721 F.3d 380, 398–400 (6th Cir. 2013) (inquiring into the "purposeful, violent, and aggressive" nature of aggravated riot in Ohio, which requires a defendant to "purpose[ly]" engage in proscribed conduct) *with United States v. Evans*, 699 F.3d 858, 865 (6th Cir. 2012) (finding it unnecessary to apply *Begay*'s "purposeful, violent, and aggressive" standard because the Ohio assault statute in question requires "knowing" conduct).  In this case, we look to the "purposeful, violent, and aggressive conduct" inquiry insofar as it helps to elucidate the nature of the crime at issue.  We now apply those principles to Denson's case.

Focusing on the comparable-risk-level inquiry, the government argues that the level of serious risk of physical injury that inheres in incitement is similar to burglary, the closest analog among § 4B1.2(a)(2)'s enumerated offenses.  "[T]he most relevant

common attribute of the enumerated offenses"—including burglary—is that they "create significant risks of bodily injury or confrontation that might result in bodily injury." *James v. United States*, 550 U.S. 192, 199 (2007). "The main risk of burglary arises . . . from the possibility of a face-to-face confrontation between the burglar and . . . an innocent person [who] might appear while the crime is in progress." *Id*. at 203.

There is little doubt that incitement can pose a serious risk of bodily injury to a third party akin to burglary. After all, the statute prohibits urging or inciting another to commit an underlying act that is an "offense of violence," which encompasses, among other things, murder, Ohio Rev. Code § 2903.02, assault, *id*. § 2903.13, rape, *id.* § 2907.02, and robbery, *id*. § 2911.02. We can assume for the sake of argument that any one of these involves a serious risk of bodily injury because, to an even greater degree than burglary, they involve the possibility of a face-to-face confrontation. And we may assume without deciding that the underlying offenses we provide as examples involve the same kind of "purposeful, violent, and aggressive conduct" as the listed crimes.

That said, we nonetheless disagree with the government's view that the risk of physical harm that incitement poses is analogous to burglary. The problem here is the state's overflowing definition of an "offense of violence" in § 2901.01(A)(9), which includes a panoply of nonviolent crimes that can undergird a garden-variety incitement conviction. Take two nonexhaustive examples. Consider first that Ohio denominates the crime of intimidating a public official an "offense of violence." *Id*. § 2901.01(A)(9)(a). A person who "knowingly . . . fil[es] . . . or otherwise us[es] a materially false or fraudulent writing . . . in bad faith . . . [to] attempt to influence, intimidate, or hinder a public servant . . . in the discharge of the person's duty" may be guilty of this crime, *id*. § 2921.03, and this conduct may be the basis for a conviction for inciting another to intimidate a public official. Yet it does not categorically pose a serious risk of physical injury, or involve "violent" or "aggressive" conduct. *See, e.g.*, *In re Contemnor Caron*, 744 N.E.2d 787, 832 (Ohio Ct. Com. Pl. 2000) (attempt to disqualify judge that is not made in good faith, fails to specify material facts supporting the grounds of disqualification, or is made untimely may violate the intimidation statute).

Another illustration:   A person under supervised-release detention who "purposely fail[s] to return to the supervised release detention" commits an "offense of violence." Ohio Rev. Code § 2921.34(A)(3).  As above, one can be convicted of inciting another to commit this offense.  In *Chambers v. United States*, the Supreme Court squarely held that a violation of a similar Illinois statute that penalized failures to report for and return to confinement is not categorically a crime of violence under the residual clause because it "does not involve conduct that presents a serious potential risk of physical injury to another."   555 U.S. 122, 128 (2009) (internal quotation marks omitted).  (True, *Chambers* did not consider a law that proscribed *inciting* a failure-to-report violation, but that distinction provides no basis for a different result.)  Accepting that inciting another person to fail to return to detention is categorically a crime of violence just because Ohio law dubs the underlying conduct an "offense of violence" would fly in the face of this authority.

Our analysis is consistent with this court's recent decision in *Stafford*, 721 F.3d at 398–400.  That case applied the modified-categorical approach to hold that an aggravated-riot conviction in Ohio is a "violent felony" under the ACCA's residual clause because it "involves conduct that presents a serious potential risk of physical injury to another."   The statute at issue in *Stafford* prohibits any person from "participat[ing] with four or more others in a course of disorderly conduct" in violation of Ohio's disorderly-conduct statute "[w]ith purpose to commit or facilitate the commission of any offense of violence."  Ohio Rev. Code § 2917.02(A)(2).  *Stafford* considered the defendant's argument that an aggravated-riot conviction was not a "violent felony" under the ACCA because the term "offense of violence" used in the statute encompasses many offenses enumerated in § 2901.01(A)(9) that do not pose a serious potential risk of physical injury to another, and so do not fall within the residual clause.  721 F.3d at 398–400.

In line with our approach here, *Stafford* concluded that not every crime in § 2901.01(A)(9) presents a serious risk of physical injury to others, reasoning that those enumerated offenses that "lack the adequate *mens rea* are excluded" from the universe

of violent felonies.  *Id*. at 399.  To this we add the mostly obvious point that an "offense of violence" under § 2901.01(A)(9) that does not entail a serious potential risk of physical injury to another also does not fall within the residual clause.  As the Supreme Court has concluded, a crime is not a violent felony just because it must be committed knowingly or purposely.  *See, e.g.*, *Chambers*, 555 U.S. at 127–28 (concluding that Illinois's failure-to-report statute, which requires intentional or knowing conduct for conviction, *see* 720 Ill. Comp. Stat. 5/31-6(a), is not a violent felony under the ACCA's residual clause because it does not involve conduct that presents a serious potential risk of physical injury to another).  *Stafford* is consistent with these principles, as the court there found Ohio's aggravated-riot statute to be a violent felony within the ACCA's residual clause *both* because it requires "purposeful conduct" *and* "is only violated when a group of four or more people act in a disorderly manner"—thus posing a serious risk of physical injury.  721 F.3d at 399–400.

To sum up:  When an Ohio felony conviction requires another "offense of violence" to underlie it—as inciting to violence does—the federal sentencing court must consider whether the underlying offense is a crime of violence before it can conclude that the crime of conviction so qualifies.  This is true because the sentencing court's determination of what is a crime of violence for federal sentencing purposes cannot hinge on a state's decision to affix a single label—here, "offense of violence"—to a wide array of crimes, some of which involve the threat of physical injury, others of which do not.  In view of the eclectic range of conduct that may serve as the underlying basis of an incitement conviction in Ohio, the crime of inciting to violence does not categorically pose a serious potential risk of violence, nor does it necessarily require "purposeful, violent, and aggressive conduct" akin to the listed crimes in § 4B1.2(a)(2) of the guidelines.  Thus, it is not categorically a crime of violence under the residual clause.  We turn now to the modified-categorical approach to ascertain the nature of Denson's conviction.

**2. Modified-categorical analysis of Denson's inciting-to-violence conviction**

Before we delve into the modified-categorical analysis, we must first confirm that this is among the "narrow range of cases," *Descamps*, 133 S. Ct. at 2287, in which the statute of conviction is "divisible," *id*. at 2293, because it includes "multiple, alternative elements, and so effectively creates several different crimes," *id.* at 2285 (internal quotation marks and ellipses omitted).

We think it is.  As we have explained, the question whether inciting to violence under Ohio law is a crime of violence under the federal career-offender guideline turns on the particular "offense of violence" underlying the defendant's inciting-violence conviction.  So encouraging another person to murder a third person (in which the underlying state-law "offense of violence" is a violation of the murder statute, *see* Ohio Rev. Code § 2903.02) is a crime of violence for federal sentencing purposes, but prodding another to skip out on supervised-release detention (making the underlying offense a violation of the Ohio's escape prohibitions, *see id*. § 2921.34(A)(3)) is not. This conclusion is pinned to our understanding that the "offense of violence" a defendant is charged with inciting is an element of § 2917.01 that must be proven beyond a reasonable doubt.  *See, e.g.*, 2 Ohio Jury Instructions § 517.01 cmt. ("The court must instruct the jury on the elements of the applicable offense of violence as charged in the indictment, together with the meaning of pertinent words and phrases."); *see also Richardson v. United States*, 526 U.S. 813, 817 (1999) (an "element" is a fact that a jury must unanimously find).

Because Ohio's incitement statute is divisible—referring, as it does, "to several different crimes, not all of which qualify as [a career-offender] predicate"—we next "determine which alternative element . . . formed the basis of the defendant's conviction." *Descamps*, 133 S. Ct. at 2284, 2293 (internal quotation marks omitted). For that, we look at the *Shepard* documents in the record "to see if they 'necessarily' establish the nature of the prior offense." *Ford*, 560 F.3d at 422 (quoting *Shepard*, 544 U.S. at 26).  The question is whether the underlying offense that Denson urged another

to commit is categorically a crime of violence that may render Denson's incitement conviction a crime of violence as well.

First up is Denson's indictment, which is of little use. It tells us only that Denson violated Ohio Revised Code § 2917.01(A)(1) because his conduct "t[ook] place under circumstances that create[d] a clear and present danger that any offense of violence w[ould] be committed," offering no further details or indication of the underlying "offense of violence." But the next *Shepard* document in the record, Denson's plea colloquy, gets the government where it wants to go. After explaining the elements of incitement and making clear that "the offense of violence which another person or persons would be urged or incited to commit is a felony," the state-court judge said to Denson: "The underlying felony would be felonious assault or attempted murder, whatever. You knocked somebody out, choked somebody." Denson replied, "Yes."

A person commits a felonious assault in Ohio if he "knowingly" causes "serious physical harm to another or to another's unborn," Ohio Rev. Code § 2903.11(A)(1), or "[c]ause[s] or attempt[s] to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance," *id*. § 2903.11(A)(2). A person can also be convicted of felonious assault if he engages in sexual conduct under certain circumstances knowing he has HIV or AIDS. *Id*. § 2903.11(B). With respect to attempted murder, one commits the offense by "engag[ing] in conduct that, if successful, would result in purposely causing the death of another." *State v. Williams*, 922 N.E.2d 937, 942 (Ohio 2010) (citing Ohio Rev. Code § 2903.02(A)). Further, felonious assault by causing serious physical harm is a lesser-included offense of attempted murder. *State v. Deanda*, 989 N.E.2d 986, 992 (Ohio 2013).

The plea colloquy suggests that Denson pled to incitement to felonious assault under § 2903.11(A)(1), since the factual predicate Denson admitted—that he "knocked somebody out, choked somebody"—bears no conceivable relationship to sexual conduct proscribed by § 2903.11(B), and does not involve use of a deadly weapon or dangerous ordnance, as required under § 2903.11(A)(2). We recently held that a § 2903.11(A) conviction is a violent felony under the ACCA because it necessarily includes a use-of-

physical-force element, but that a § 2903.11(B) conviction is not. *United States v. Anderson*, 695 F.3d 390, 402 (6th Cir. 2012). In sum, Denson "'necessarily admitted' the elements of a predicate offense through his plea," *Medina-Almaguer*, 559 F.3d at 423 (quoting *Shepard*, 544 U.S. at 16), because he agreed in the colloquy that he incited someone else to violate the species of felonious assault that is a crime of violence for career-offender purposes. As a result, the district court correctly concluded that Denson committed a crime of violence.

## B.  Acceptance-of-responsibility adjustment

The second issue Denson raises on appeal is that the district court improperly declined to reduce his base-offense level because he "clearly demonstrate[d] acceptance of responsibility for his offense." U.S.S.G. § 3E1.1. We typically review for clear error a district court's acceptance-of-responsibility determination, but "if the only issue presented is the propriety of applying the reduction to the uncontested facts, the decision is reviewed de novo." *United States v. Coss*, 677 F.3d 278, 290 (6th Cir. 2012) (internal quotation marks omitted). Here, although the government says that de novo review is appropriate, Denson takes a different tack and argues that we should review for clear error. We do not need to decide the appropriate standard because Denson's challenge fails under either one.

The guidelines recognize that the combination of three acts—pleading guilty before trial, "truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct"—amount to "significant evidence" of acceptance of responsibility. U.S.S.G. § 3E1.1. cmt. 3. But conduct inconsistent with acceptance of responsibility may outweigh such evidence. *Id*. In determining whether a defendant qualifies for a reduction, a court may consider a defendant's "voluntary termination or withdrawal from criminal conduct or associations." *Id*. cmt. 1(B). It is Denson's burden to show by a preponderance of the evidence that a reduction is warranted. *United States v. Banks*, 252 F.3d 801, 806 (6th Cir. 2001).

Denson was charged with a weapons offense in state court after he pled guilty in this matter. He argues that the district court lacked evidence of a "guilty plea or jury verdict" stemming from the new offense, and improperly relied instead on information about the offense in Denson's presentence report. Denson contends, effectively, that to deny an acceptance-of-responsibility adjustment, the district court had to find the fact of his new weapons offense beyond a reasonable doubt.

Denson's claim runs headlong into authority establishing that we do not "require all factual findings affecting a sentence's severity to be made by a jury beyond a reasonable doubt." *United States v. Sexton*, 512 F.3d 326, 329–30 (6th Cir. 2008). Instead, district judges may find the facts necessary to calculate the appropriate advisory guidelines range based on a preponderance of the evidence. *United States v. Roberge*, 565 F.3d 1005, 1012 (6th Cir. 2009). And while a district court must base its findings on "reliable information," *United States v. Yagar*, 404 F.3d 967, 972 (6th Cir. 2005), a sentencing court "may accept any undisputed portion of the presentence report as a finding of fact." Fed. R. Crim. P. 32(i)(3)(A).

Getting to the question at hand, there was surely enough evidence in the record to support the district court's determination. The court found evidence in the presentence report that Denson was involved in another firearm offense before he was sentenced in this case. The report stated that Denson supplied a shotgun to an informant who planned to commit a robbery and share the proceeds with Denson. Police officers observed the informant leave Denson's residence with the shotgun and recorded the transaction with video or audio devices. Moreover, officers found ammunition in Denson's home. The district court observed that it was "hard to imagine" conduct that "negates" acceptance of responsibility more than selling or renting a shotgun, and concluded that the report amounted to "awfully strong evidence" to deny the reduction. Notably, Denson did not produce evidence to challenge the reliability or correctness of the report's assertions. Given that, the district court properly relied on the uncontested report. *See United States v. Geerken*, 506 F.3d 461, 467 (6th Cir. 2007) ("When a defendant fails to produce any evidence to contradict the facts set forth in the

[presentence report], a district court is entitled to rely on those facts when sentencing the defendant.").

To wrap up: Because the state charge involving a firearm sufficiently demonstrated that Denson did not withdraw from illegally possessing firearms before he was sentenced in this case, the court did not err in declining to grant Denson an acceptance-of-responsibility adjustment.

## III. CONCLUSION

A conviction under Ohio's inciting-to-violence statute is not categorically a crime of violence within the meaning of the guidelines' career-offender provisions. But because the facts of Denson's inciting-to-violence conviction necessarily establish that the species of incitement to which he pled guilty is a crime of violence, we **AFFIRM** his sentence on that ground. And because we find no error in the district court's denial of Denson's request for an acceptance-of-responsibility reduction, we **AFFIRM** that determination as well.