**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0380n.06

No. 18-6193

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jul 26, 2019
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

CHRISTOPHER SMITH,

      Defendant-Appellant.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF
TENNESSEE

BEFORE: SUHRHEINRICH, CLAY, and DONALD, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Christopher Smith appeals the district court's October 29, 2018 order sentencing him to a 97-month term of imprisonment and a 3-year term of supervised release following his guilty plea to the charge of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Defendant's guilty plea and sentence arise out of a gunfight between Defendant and two of his childhood friends in which all three individuals were injured. For the reasons set forth below, we **AFFIRM** the district court's sentence.

**BACKGROUND**

**Factual Background**

On April 6, 2017, a gunfight occurred outside a housing complex in Memphis, Tennessee. The three individuals involved in the gunfight were Defendant and two of his childhood friends, brothers Darrell Coleman and Avanti Cloyd. Law enforcement officers found Coleman and Cloyd on the ground in front of the complex with gunshot wounds to the left arm and abdomen

respectively. Law enforcement officers found Defendant on the floor inside of an adjacent housing complex with gunshot wounds to the right arm. Nearby surveillance footage showed that, after the gunfight, Defendant followed a resident into the adjacent complex, where he tried to dispose of a firearm before falling to the floor as a result of his injuries.

At the outset of the law enforcement investigation into the gunfight, Coleman and Cloyd told the officers that an unknown man had approached them outside of the housing complex and shot them for no reason. Defendant told the officers that two unknown men had approached him outside of the housing complex and shot him as part of an attempted robbery. However, as the investigation progressed, an entirely different version of events began to take shape.

One week after the gunfight, Coleman and Cloyd recanted their initial statements, and told the officers that it was in fact Defendant, a childhood friend, who had shot them. Coleman and Cloyd explained that Defendant was in a turbulent romantic relationship with their mother, that their mother reported to them that on several occasions Defendant threatened to kill her, and that they confronted Defendant about these reports outside of the housing complex. Coleman and Cloyd further explained that, during the confrontation, Cloyd challenged Defendant to a fistfight, and Defendant responded by pulling out a firearm and shooting them, at which point Cloyd shot back in self-defense.

Shortly thereafter, Defendant was arrested. Defendant refused to recant his initial statement at that time, but would later confirm that Coleman and Cloyd confronted him outside of the housing complex about his romantic relationship with their mother. However, Defendant stated that, during the confrontation, Cloyd pulled out a firearm and shot him, at which point he shot back in self-defense.

**Procedural History**

On March 29, 2018, Defendant was charged in the United States District Court for the Western District of Tennessee with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).[1] On July 27, 2018, Defendant pleaded guilty to the charged offense. (RE 26, PageID # 27.) And on October 29, 2018, the district court sentenced Defendant to a 97-month term of imprisonment and a 3-year term of supervised release.

Two aspects of Defendant's sentencing hearing are relevant to this appeal. First, Defendant argued that Cloyd pulled out a firearm and shot him, at which point he shot back in self-defense, and that as a result the district court should not calculate his base offense level pursuant the guidelines cross-reference for attempted murder, U.S.S.G. § 2A2.1(a)(2). The government countered that Defendant pulled out a firearm and shot Coleman and Cloyd, at which point Cloyd shot back in self-defense. Cloyd testified in accordance with the government's argument; Defendant did not testify. And the district court ultimately found that, based upon a preponderance of the evidence, Defendant "was first to pull his gun and fire the shots," at which point Cloyd shot back in self-defense. (RE 37, Sentencing Hearing Transcript, PageID # 192–93, 201.) Accordingly, the district court applied the guidelines cross-reference for attempted murder.

Second, the government argued that during the law enforcement investigation into the gunfight, Defendant provided two false statements regarding the gunfight, and that as a result the district court should not reduce Defendant's total offense level pursuant to the guidelines reduction for acceptance of responsibility, U.S.S.G. § 3E1.1(a). Specifically, the government argued that Defendant initially falsely stated that two unknown men had approached him outside of the

---

[1] On August 10, 2017, Defendant was charged in Tennessee state court with attempted murder, employing a firearm with intent to commit a felony, and being a felon in possession of a firearm, in violation of Tennessee state law.

3

housing complex and shot him as part of an attempted robbery, and that Defendant later falsely stated that Cloyd pulled out a firearm and shot him, at which point he shot back in self-defense. Defendant countered that he pleaded guilty before trial, admitted to being a felon in possession of a firearm, and did not frivolously contest the facts surrounding the shooting, all of which evince acceptance of responsibility. And the district court ultimately found that Defendant both "went out of his way to . . . send the police . . . down a wild goose chase" by initially making a false, "self-serving" statement about an attempted robbery, and later made a "false denial" by "contesting the fact[]" that he pulled out a firearm and shot Coleman and Cloyd, at which point Cloyd shot back in self-defense. (*Id.* at PageID # 197–98, 200–01.) Accordingly, the district court did not apply the guidelines reduction for acceptance of responsibility.

This appeal followed.

## DISCUSSION

On appeal, the only issue is whether Defendant's sentence was procedurally unreasonable because the district court improperly determined that the acceptance of responsibility reduction should not be applied. Defendant argues that the district court used the wrong test in determining that the acceptance of responsibility reduction should not be applied. The government argues that the district court used the correct test in determining that the acceptance of responsibility reduction should not be applied. Because the record clearly indicates that the district court used the correct test, we hold that Defendant's sentence was not procedurally unreasonable.

### I.    Standard of Review

Typically, we review for clear error the factual aspects of district court's acceptance of responsibility determination, and review de novo the propriety of applying the acceptance of responsibility reduction to uncontested facts. *United States v. Denson*, 728 F.3d 603, 614 (6th Cir.

2013). However, in this case, Defendant does not appear to contest the district court's factual findings that he initially falsely stated that two unknown men had approached him outside of the housing complex and shot him as part of an attempted robbery, and that he later falsely stated that Cloyd pulled out a firearm and shot him, at which point he shot back in self-defense.[2] And Defendant also does not appear to contest the propriety of applying the acceptance of responsibility reduction to those factual findings.[3] Rather, Defendant argues that the district court used the wrong test in determining that the acceptance of responsibility reduction should not be applied.

However, "'where a party has failed to object to a procedural defect' at the sentencing hearing, 'we review claims of procedural unreasonableness for plain error.'" *United States v. King*, 914 F.3d 1021, 1024 (6th Cir. 2019) (quotation omitted). Defendant concedes that he did not object at the sentencing hearing to the test that the district court used. And Defendant's claims on appeal is that his sentence was procedurally unreasonable. *See United States v. Mackety*, 650 F.3d 621, 624 (6th Cir. 2011); *see also United States v. Hill*, 620 F. App'x 380, 382 (6th Cir 2015). Thus, in this case, we review only for plain error whether the district court used the wrong test in determining that the acceptance of responsibility reduction should not be applied. *See United*

---

[2] To the extent that Defendant does contest these factual findings, neither was clearly erroneous. With regard to the former, Defendant conceded that his initial statement about the gunfight was false. And "[w]hen, as here, the defendant admits to [engaging in certain conduct], it is not clearly erroneous for the [district] court to determine that a preponderance of the evidence establishes that the defendant [engaged in that conduct]." *United States v. Wilson*, 954 F.2d 374, 377 (6th Cir. 1992). With regard to the latter, the district court acknowledged that there were "multiple versions of what happened" outside of the housing complex and that it "d[id] [its] best" to evaluate each version, before finding that Defendant's later statement about the gunfight was also false. (RE 37, PageID # 109, 188, 192–93.) And "[c]lear error will not be found where two permissible views of the evidence exist." *United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008).

[3] In one paragraph of his brief to this Court, Defendant asserts, without any citation, that he "truthfully admitted his guilt in connection with the offense for which he was charged," which "was significant evidence of acceptance of responsibility." (Brief for Appellant at 18.) But "the mere entry of a guilty plea does not entitle a defendant to a sentence reduction as a matter of right." *United States v. Edwards*, 272 F.3d 812, 815 (6th Cir. 2001). In the same paragraph, Defendant also asserts, without any citation, that this "significant evidence of acceptance of responsibility" "outweighs" his conduct inconsistent with acceptance of responsibility. (Brief of Appellant at 18.) But such a "conclusory argument" made "without any further discussion or citation to authority" is forfeited. *General Star Nat. Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 441 (6th Cir. 2002).

*States v. Forte*, 81 F.3d 215, 217 (D.C. Cir. 1996) (reviewing the same argument only for plain error because the defendant did not object at the sentencing hearing to the test applied by the district court). Plain error requires "(1) error, (2) that was obvious or clear, (3) that affected [the defendant's] substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *King*, 914 F.3d at 1024 (quotation omitted).

## II.     Analysis

U.S.S.G. § 3E1.1(a) states that "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense," the district court must "decrease the [total] offense level by 2 levels." The defendant bears the burden to demonstrate acceptance of responsibility by a preponderance of the evidence. *United States v. Denson*, 728 F.3d 603, 614 (6th Cir. 2013). And the test for determining whether the defendant has met that burden is a "two-step inquiry:" first, whether the defendant has "demonstrated significant evidence of acceptance of responsibility;" and second, whether that evidence is "outweighed by conduct inconsistent with such acceptance[.]" *United States v. Hollis*, 823 F.3d 1045, 1047 (6th Cir. 2016).

With regard to the first step of the inquiry, "[t]he guidelines recognize that the combination of three acts—'pleading guilty before trial, truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct'"— is one way in which a defendant can demonstrate "significant evidence of acceptance of responsibility." *Denson*, 728 F.3d at 614 (quotation omitted). Accordingly, this Court has frequently recognized that a defendant's false denial of relevant conduct is an appropriate basis for determining that the acceptance of responsibility reduction should not be applied. *See, e.g.*, *United States v. Heredia-Pieto*, 742 F. App'x 962, 967 (6th Cir. 2018) ("[R]elevant precedent . . . consistently affirms denials of acceptance-of-responsibility reductions when the

defendant falsely denied the [relevant] conduct.") (alterations in original) (collecting cases); *United States v. Lay*, 583 F.3d 436, 448 (6th Cir. 2009) ("The district court's denial of the reduction for acceptance of responsibility was not erroneous, notwithstanding [the defendant's] guilty plea and statement purporting to accept responsibility. The court explicitly found [the defendant] not to be credible or honest when testifying on certain relevant matters."). The commentary to § 3E1.1 confirms as much, stating that while a defendant "is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction . . . [a] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility." U.S.S.G. § 3E1.1 cmt. 1(A).

However, the commentary to § 3E1.1 also confirms that a defendant's false denial of relevant conduct does not *automatically preclude* application of the acceptance of responsibility reduction. Specifically, the commentary states that "the fact that a defendant's challenge [to relevant conduct] is unsuccessful does not *necessarily* establish that it was either a false denial or frivolous." U.S.S.G. § 3E1.1 cmt. 1(A) (emphasis added). This sentence was added to the commentary by a 2018 amendment in "respon[se] to concerns that some courts ha[d] interpreted the commentary to § 3E1.1 . . . to *automatically preclude* application of the 2-level reduction for acceptance of responsibility when the defendant makes an unsuccessful good faith, non-frivolous challenge to relevant conduct." U.S.S.G. Suppl. to App'x C, Amendment 810 (2018) (emphasis added); *see, e.g.*, *United States v. Forte*, 81 F.3d 215, 217–18 (D.C. Cir. 1996) ("The Guidelines and cases are somewhat murky on the effect of a defendant's lying about relevant conduct upon his ability to receive § 3E1.1's acceptance of responsibility adjustment. . . . A strong reading [of the commentary to § 3E1.1] would mean that mendacity as to relevant conduct would be an

*absolute bar* to the reduction; a weak reading would mean that it only counted against award of the reduction.") (emphasis added).[4]

Thus, while a defendant's false denial of relevant conduct is an appropriate basis for determining that the acceptance of responsibility reduction should not be applied, it does not *automatically preclude* application of the acceptance of responsibility reduction. Rather, it is one of multiple considerations that the district court may weigh in making its determination. *See Hollis*, 823 F.3d at 1047. Other permissible considerations include, for instance, "voluntary termination or withdrawal from criminal conduct or associations," "voluntary payment of restitution prior to adjudication of guilt," "voluntary surrender to authorities promptly after commission of the offense," and "the timeliness of the defendant's conduct in manifesting the acceptance of responsibility." *See* U.S.S.G. § 3E1.1 cmt. 1(A)–(H). Courts should ultimately "weigh the totality of a defendant's conduct." *United States v. Bradshaw*, 102 F.3d 204, 214 (6th Cir. 1996).

In this case, Defendant argues that the district court impermissibly held that his false denial of relevant conduct *automatically precluded* application of the acceptance of responsibility reduction. In contrast, the government argues that the district court permissibly held that Defendant's false denial of relevant conduct was an appropriate basis for its determination that the

---

[4] Although the 2018 amendment to the commentary to § 3E1.1 became effective on November 1, 2018, two days *after* Defendant was sentenced, it is plainly a retroactive amendment. *See United States v. Curb*, 625 F.3d 968, 971 (6th Cir. 2010). "Whether [an amendment] applies retroactively . . . turns on whether it was 'clarifying' or 'substantive.'" *United States v. Jackson*, 901 F.3d 706, 709 (6th Cir. 2018). A clarifying amendment applies retroactively, while a substantive amendment does not. *See id.* When determining whether an amendment is "clarifying" or "substantive," we consider three factors: "(1) how the Sentencing Commission characterized the amendment; (2) whether the amendment changes the language of the guideline itself or changes only the commentary for the guideline; and (3) whether the amendment resolves an ambiguity in the original wording of the guideline." *United States v. Geerken*, 506 F.3d 461, 465 (6th Cir. 2007) (quotation omitted). In this case, all three factors favor classifying Amendment 810 as "clarifying." The Sentencing Commission explicitly characterized the amendment as "clarif[ying]." U.S.S.G. Suppl. to App'x C, Amendment 810 (2018). The amendment changes only the commentary for § 3E1.1 as opposed to § 3E1.1 itself. *Id.* And the amendment resolves an ambiguity in the original wording of the commentary. *Id.*; *see e.g. Forte*, 81 F.3d at 217–18 (explaining the ambiguity). Accordingly, Amendment 810 is plainly a "clarifying," and therefore retroactive, amendment. *See Geerken*, 506 F.3d at 466; *see also United States v. Carter*, 662 F. App'x 342, 349 (6th Cir. 2016).

acceptance of responsibility reduction was inapplicable. The record clearly indicates that the government's argument prevails.

At the sentencing hearing, the district court first determined which of the "multiple versions of what happened" outside of the housing complex was supported by a preponderance of the evidence. (RE 37, PageID # 109.) Although Defendant argued that Cloyd pulled out a firearm and shot him, at which point he shot back in self-defense, the district court stated that "[t]hat [was] not a credible theory" because it was "not at all convinced that [Coleman and Cloyd] were so upset [about Defendant's romantic relationship with their mother] that they would've tried to initiate a gunfight." (*Id.* at PageID # 189–90.) The district court explained that Cloyd's testimony that Defendant pulled out a firearm and shot Coleman and Cloyd, at which point Cloyd shot back in self-defense, was "uncontroverted" because Defendant "ha[d] not [testified to] his version of events." (*Id.* at PageID # 190–91.) And the district court ultimately found that "the self-defense argument by the defendant simply d[id] not satisfy the preponderance of the evidence," whereas the government's argument did. (*Id.* at PageID # 193.)

The district court then turned to the acceptance of responsibility reduction. The district court explained that it was "[i]nitially . . . very skeptical of the acceptance of responsibility [reduction]" because Defendant "went out of his way to . . . send the police . . . down a wild goose chase" by initially making a false, "self-serving" statement about an attempted robbery. (*Id.* at PageID # 197–98.) However, the district court also explained that Defendant "did admit to the essential elements of th[e] case," and that "all three" of the individuals initially provided false statements to the law enforcement officers, likely because "they all grew up together." (*Id* at PageID # 198.) And at this point, the district court was actually inclined to *grant* Defendant the

9

acceptance of responsibility reduction, finding that he "provide[d] enough" evidence of acceptance of responsibility, albeit "barely." (*Id.*)

However, the government reminded the district court that Defendant had also falsely denied relevant conduct that the court had determined to be true when he argued that Cloyd pulled out a firearm and shot him, at which point he shot back in self-defense. The district court then stated that "[i]n looking at [U.S.S.G. § 3E1.1 cmt. 1(a)], it does indicate that a false denial of relevant conduct is *a basis* for denying acceptance [of responsibility credit]." (*Id.* at PageID # 200.) (emphasis added). The district court further explained:

> The Court is going to go back and make sure this is clear. . . . [T]he way acceptance of responsibility works is it is defined as "clearly demonstrating acceptance of responsibility for the offense." [Defendant] was well on his way to doing that by admitting his guilt and making [a] statement to the probation office. But . . . the Court has now found that the government has met its burden of proof with regard to the shooting and the fact that [Defendant] was first to pull his gun and fire the shots. Because of that, as I read the commentary for 3E1.1, I find that [Defendant], while it's not a frivolous objection, he did falsely deny the relevant conduct. And that false denial is inconsistent with acceptance of responsibility.

(*Id.* at PageID # 200–01.) Accordingly, the district court ultimately found that the government's argument was "appropriate" and "actually carrie[d] the day," and that the acceptance of responsibility reduction should not be applied. (*Id.* at PageID # 201.)

This record clearly indicates that the district court did not impermissibly hold that his false denial of relevant conduct *automatically precluded* application of the acceptance of responsibility reduction. Rather, the district court permissibly held that Defendant's false denial of relevant conduct was an appropriate basis for its determination that the acceptance of responsibility reduction should not be applied. Indeed, the district court weighed multiple considerations, including Defendant's guilty plea, Defendant's admission to being a felon in possession of a firearm, Defendant's first false statement about an attempted robbery, and Coleman and Cloyd's

false statements about a random shooting. The district court also weighed Defendant's false denial of relevant conduct, before citing that false denial as "a basis" for its acceptance of responsibility determination. (*Id.* at PageID # 200.) Such weighing of considerations is precisely what this Court's precedent dictates. *See Hollis*, 823 F.3d at 1047. Thus, we hold that Defendant's sentence was not procedurally unreasonable.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's sentence.