RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0337p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

No. 19-3394

*v.*

MERCEDES WILSON,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:17-cr-00365-1—Solomon Oliver, Jr., District Judge.

Argued: February 6, 2020

Decided and Filed: October 23, 2020

Before: ROGERS, KETHLEDGE, and LARSEN, Circuit Judges.

_____

### COUNSEL

**ARGUED:** Megan R. Miller, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellant. Lori B. Riga, FEDERAL PUBLIC DEFENDER'S OFFICE, Cleveland, Ohio, for Appellee. **ON BRIEF:** Megan R. Miller, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellant. Lori B. Riga, FEDERAL PUBLIC DEFENDER'S OFFICE, Cleveland, Ohio, for Appellee.

_____

### OPINION

_____

LARSEN, Circuit Judge. Mercedes Wilson pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). At sentencing, the government argued that,

under the Armed Career Criminal Act (ACCA), Wilson should be subject to a fifteen-year mandatory minimum sentence because of three prior state aggravated robbery convictions. Relying on this court's opinion in *United States v. Burris*, 912 F.3d 386 (6th Cir. 2019) (en banc), the district court concluded that one of Wilson's prior aggravated robbery convictions, under Ohio Revised Code (O.R.C.) § 2911.01(A)(3), was not a violent felony under the ACCA, and so Wilson was not subject to the fifteen-year minimum. The government appeals. For the reasons stated, we VACATE Wilson's sentence and REMAND for further proceedings.

I.

Mercedes Wilson was arrested after he ran from a routine traffic stop. When police searched the area where Wilson was apprehended, they discovered "two clear plastic bags of cocaine and a loaded handgun." Wilson, who previously had been convicted of multiple felonies, was indicted for possessing a firearm in violation of 18 U.S.C. § 922(g)(1). Wilson pleaded guilty.

The typical violation of § 922(g) carries a maximum sentence of ten years. 18 U.S.C § 924(a)(2). But, under the ACCA, the ten-year maximum becomes a fifteen-year minimum if the offender has three prior "violent felony" convictions. *Id.* § 924(e)(1). At sentencing, the government argued that Wilson's three prior aggravated robbery convictions were violent felonies under the ACCA. Wilson objected to the ACCA enhancement; he argued that his prior aggravated robbery conviction under O.R.C. § 2911.01(A)(3) ((A)(3) Aggravated Robbery) was not a violent felony because, in his view, one could be convicted "even when the victim of the crime suffered little or no actual physical injury."[1] Wilson also moved to continue the sentencing hearing until this court had resolved pending cases that would consider whether a conviction under Ohio statutes with similar language qualified as ACCA predicates. The district court granted the motion to continue the hearing.

In the meantime, this court issued a fractured en banc opinion in *United States v. Burris*, 912 F.3d 386 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 90 (2019). There, we considered whether

---

[1]Wilson was initially charged with kidnapping, both (A)(1) and (A)(3) Aggravated Robbery with firearm specifications, two counts of felonious assault, attempted grand theft, and "Having Weapons While Under Disability." He pleaded down to just the (A)(3) Aggravated Robbery count.

Ohio's felonious- and aggravated-assault crimes, O.R.C. §§ 2903.11(A), 2903.12(A), constituted violent felonies under the ACCA. *Burris*, 912 F.3d at 390. We determined that both crimes were divisible, with "subsection (A)(1) and subsection (A)(2) of each statute set[ting] forth a separate crime." *Id.* at 405. We then held that the (A)(2) crimes were ACCA predicates because they require the use of a deadly weapon or dangerous ordnance. *See id.* at 406. But the (A)(1) crimes, which criminalized the causing of "serious physical harm to another," were not. *See id.* at 400, 406.

With respect to the (A)(2) crimes, we noted that Ohio defines "serious physical harm" to include not only bodily injury but also "[a]ny mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment." O.R.C. § 2901.01(A)(5)(a). Examining the statutes and Ohio caselaw led us to conclude "that there is at least a 'realistic probability' that a person may be convicted of" Ohio (A)(2) aggravated or felonious assault "without using physical force, as defined in the ACCA." *Burris*, 912 F.3d at 399.

Once Wilson's sentencing recommenced, he argued that *Burris* precluded his (A)(3) Aggravated Robbery conviction from qualifying as a violent felony under the ACCA because it also includes, as an element, the causing of "serious physical harm to another." The district court agreed and sentenced Wilson to seventy-nine months' imprisonment. The government timely appealed.

## II.

We review de novo whether a prior conviction constitutes a violent felony under the ACCA. *United States v. Gatson*, 776 F.3d 405, 410 (6th Cir. 2015). As relevant here, the ACCA defines a "violent felony" as any felony that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). "This clause is commonly called the ACCA 'elements clause.'" *Burris*, 912 F.3d at 392. To determine whether a previous conviction satisfies the elements clause, we apply the "categorical approach," that is, we "'look only to the statutory definitions'—*i.e.*, the elements—of a defendant's prior offenses, and *not* 'to the particular facts underlying those convictions.'"

*Descamps v. United States*, 570 U.S. 254, 261 (2013) (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)).  Thus, "[t]he question for the sentencing court in the elements-clause context is whether every defendant convicted of that state or federal felony *must have* used, attempted to use, or threatened to use physical force against the person of another *in order to have been convicted*, not whether the particular defendant *actually* used, attempted to use, or threatened to use physical force against the person of another *in that particular case*."  *Burris*, 912 F.3d at 392. "The Supreme Court has cautioned us, however, not to 'apply legal imagination to the state offense; there must be a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside' the conduct described in the elements clauses."  *Id.* at 398 (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013)).

Wilson was previously convicted of three counts of Ohio aggravated robbery, two under O.R.C. § 2911.01(A)(1) and one under § 2911.01(A)(3).  The parties dispute only the violent-felony status of Wilson's (A)(3) Aggravated Robbery conviction.

A person who, "in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, . . . [i]nflict[s], or attempt[s] to inflict, serious physical harm on another," is guilty of (A)(3) Aggravated Robbery. O.R.C. § 2911.01(A)(3).  The parties' disagreement rests in the "serious physical harm" language.  On its face, it might seem that causing "serious physical harm" would necessarily entail the use of "physical force," which for ACCA purposes means "force capable of causing physical pain or injury to another person."  *Johnson v. United States*, 559 U.S. 133, 140 (2010). But Ohio law defines "serious physical harm" to include not only harm to the body, but also "[a]ny mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment."  O.R.C. § 2901.01(A)(5)(a).  Wilson argues that because Ohio defines "serious physical harm" to include mental harm, a defendant could commit the crime of (A)(3) Aggravated Robbery without using "physical force."  It follows, he claims, that (A)(3) Aggravated Robbery is not a violent felony under the ACCA.

Wilson believes that *Burris* dictates this conclusion.  He argues that *Burris* "already held [that] Ohio's 'serious physical harm' element is categorically overbroad"; accordingly, *any*

statute in the Ohio Code—including (A)(3) Aggravated Robbery—that criminalizes conduct resulting in "serious physical harm" does not qualify as a violent felony.

*Burris* does not sweep as broadly as Wilson would like. *Burris* held that the definition of "serious physical harm," when applied to two *particular* statutes—Ohio's felonious-assault and aggravated-assault statutes—rendered those statutes "too broad to categorically qualify as violent-felony predicates under the ACCA." *Burris*, 912 F.3d at 399. This matters because we do not look at elements in isolation but at how the statutes as a whole will, in reality, be applied. *See Moncrieffe*, 569 U.S. at 191. As in *Burris*, then, we must look at how the "serious physical harm" element is applied in the specific offense at issue here, (A)(3) Aggravated Robbery.

Undertaking this task reveals important distinctions between (A)(3) Aggravated Robbery and the assault statutes at issue in *Burris.* First, to obtain a conviction for Ohio felonious assault, a prosecutor need show only that the perpetrator knowingly caused severe mental harm. *See* O.R.C. § 2903.11(A)(1) ("No person shall knowingly . . . [c]ause serious physical harm to another or to another's unborn . . . ."); *id.* § 2901.01(A)(5)(a) (defining "serious physical harm" to include severe mental harm). Ohio aggravated assault adds a different mental state but requires no more by way of primary conduct. *See* O.R.C. § 2903.12(A)(1) ("No person, while under the influence of sudden passion or in a sudden fit of rage, . . . shall knowingly . . . [c]ause serious physical harm to another or to another's unborn . . . ."). By contrast, (A)(3) Aggravated Robbery requires proof that the defendant inflicted severe mental harm "in attempting or committing a theft offense . . . or in fleeing immediately after the attempt or offense." O.R.C. § 2911.01(A). That narrows the scope of the statute considerably. Second, *Burris* considered how Ohio courts had applied the assault statutes; it noted three state court decisions upholding assault convictions when severe mental harm resulted, though no physical force had been used or threatened. 912 F.3d at 398–99. As Wilson concedes, however, there is no such caselaw for (A)(3) Aggravated Robbery. These differences in the statutory text and the related state caselaw matter. We therefore disagree with Wilson and the district court that *Burris* requires us to hold that (A)(3) Aggravated Robbery is not a violent felony.

Yet that conclusion tells us only that *Burris* did not answer whether (A)(3) Aggravated Robbery is a violent felony. We still must decide whether it is. The government asks us to

resolve this question by adopting the reasoning of *Fullum v. United States*, 756 F. App'x 568 (6th Cir. 2018). There, a panel of this court concluded that (A)(3) Aggravated Robbery did constitute a violent felony. *Id.* at 570. The panel noted that the statute required a defendant to "inflict grave mental harm in the course of or immediately after stealing property." *Id.* at 571. "In that short window of time, it seem[ed] unlikely that a thief could cause the victim mental harm requiring prolonged psychiatric treatment without using or threatening violent force." *Id.* But, for reasons not presented to the panel in *Fullum*, we decline to follow that course.

Wilson directs us to the many predicate "theft offenses" underlying (A)(3) Aggravated Robbery, some of which do not require physical proximity to a victim or his property. *See* O.R.C. § 2913.01(K) (defining "theft offense"). He argues, for example, that without using violent force, one could cause a victim to suffer serious mental illness "in attempting or committing a theft offense" like blackmail, which is arguably a predicate "theft offense" for purposes of (A)(3) Aggravated Robbery.[2] *See* O.R.C. § 2913.02(A)(4) ("No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services . . . [b]y threat . . . .").

To appreciate this argument, we need to examine the statutory language defining (A)(3) Aggravated Robbery. O.R.C. § 2911.01(A) provides:

> No person, in attempting or committing a theft offense, *as defined in section 2913.01 of the Revised Code*, or in fleeing immediately after the attempt or offense, shall do any of the following:
>
>> (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
>>
>> (2) Have a dangerous ordnance on or about the offender's person or under the offender's control;
>>
>> (3) Inflict, or attempt to inflict, serious physical harm on another.

---

[2]At argument, the government responded that Ohio has a separate extortion statute, O.R.C. § 2905.11, that seems to cover blackmail specifically, *see id.* § 2905.11(A)(5) ("No person, with purpose to obtain any valuable thing or valuable benefit or to induce anther to do an unlawful act, shall . . . [e]xpose or threaten to expose any matter tending to subject any person to hatred, contempt, or ridicule, or to damage any person's personal or business repute, or to impair any person's credit."). That extortion statute is not among those enumerated as "[t]heft offense[s]" in O.R.C. § 2913.01(K).

(emphasis added).  Wilson asks us to look at *each* of the theft offenses defined in O.R.C. § 2913.01(K) and ask whether there is a realistic probability that while committing *any* of them, an offender could cause the victim severe mental injury, without using violent force.  If so, Wilson urges, we must declare (A)(3) Aggravated Robbery categorically *not* a violent felony.

Thirty-one different theft offenses qualify as predicate "theft offenses" under (A)(3) Aggravated Robbery.  *See* O.R.C. § 2913.01(K)(1).[3]  Those thirty-one crimes cover a broad range of conduct:  robbery, burglary, securing writing by deception, theft by threat, identity theft, safecracking, and tampering with coin machines, just to name a few.  So if we must consider the "minimum conduct criminalized" by *any* of them, *see Moncrieffe*, 569 U.S. at 191, the odds surely increase that (A)(3) Aggravated Robbery is *not* a violent felony.

But that is not our task.  When reviewing a statute for ACCA purposes, we must consider whether it is divisible.  *See Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016).  A divisible statute "list[s] elements in the alternative, and thereby define[s] multiple crimes," *id.* at 2249, rather than setting out "alternative factual *means* of committing a single element."  *Burris*, 912 F.3d at 393.  "Elements are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction.  At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant."  *Mathis*, 136 S. Ct. at 2248 (citations and quotation marks omitted).  And "at a plea hearing, they are what the defendant necessarily admits when he pleads guilty."  *Id.*  As the district court rightly concluded, Ohio's aggravated robbery statute, O.R.C. § 2911.01(A) is divisible into three parts—(A)(1), (A)(2), and (A)(3).  These are separate crimes with separate elements, and the parties do not contest this point.  *See*

---

[3]That number does not include the following additional predicate theft offenses:

> (2) A violation of an existing or former municipal ordinance or law of this or any other state, or of the United States, substantially equivalent to any section listed in division (K)(1) of this section or a violation of section 2913.41, 2913.81, or 2915.06 of the Revised Code as it existed prior to July 1, 1996;

> (3) An offense under an existing or former municipal ordinance or law of this or any other state, or of the United States, involving robbery, burglary, breaking and entering, theft, embezzlement, wrongful conversion, forgery, counterfeiting, deceit, or fraud;

> (4) A conspiracy or attempt to commit, or complicity in committing, any offense under division (K)(1), (2), or (3) of this section.

O.R.C. § 2913.01(K)(2)–(4).

*also Fullum*, 756 F. App'x at 570.  But Wilson's suggestion that we must consider each of the statute's predicate theft offenses raises the question whether these also constitute separate crimes.  That is:  is the statute twice divisible?

Much turns on the answer to that question.  If the statute is twice divisible—once by recognizing (A)(1), (A)(2), and (A)(3) as separate crimes, and again by recognizing each of the predicate theft offenses as separate crimes—then our analysis is limited.  Our task would be to determine whether there is a "realistic probability" that a person could, while "attempting or committing" Wilson's *particular* theft offense of conviction (or fleeing immediately thereafter), cause "serious physical harm" without the use, attempted use or threatened use of violent force. *See Mathis*, 136 S. Ct. at 2249, 2256 (explaining that once a court determines a crime is divisible, it must then apply the modified categorical approach "to discover which of the enumerated alternatives played a part in the defendant's prior conviction" and determine if *that* offense is an ACCA predicate).

When asked to brief the question, both parties took the position that the statute is not twice divisible.  Wilson, for his part, tried to support his position with legal authority.  The government, however, merely asserted that the statute is not twice divisible.  We are not bound to accept "what in effect was a stipulation on a question of law." *U.S. Nat'l Bank of Or. v. Ind. Ins. Agents of Am., Inc.*, 508 U.S. 439, 448 (1993).  "The role of the judicial branch is to apply statutory language and we cannot cede our authority to interpret statutes to the parties or their attorneys." *Bourdon v. U.S. Dep't of Homeland Sec.*, 940 F.3d 537, 547 n.6 (11th Cir. 2019) (citations and quotation marks omitted).  That is particularly true here, given the government's unwillingness to support its position with legal authority and given the widespread and serious effect that a decision in an ACCA case like this may have.  Our own review of Ohio law, including the cases cited by Wilson, leads us to conclude that the aggravated robbery statute is twice divisible.

We have previously confronted another Ohio statute with a structure similar to the aggravated robbery statute.  In *United States v. Denson*, we examined Ohio's inciting to violence statute, *see* O.R.C. § 2917.01(A), and determined that the statute was divisible.  728 F.3d 603, 612 (6th Cir. 2013).  Like the aggravated robbery statute, Ohio's inciting to violence statute

listed as predicate acts "nearly three dozen enumerated offenses, *see* [O.R.C.] § 2901.01(A)(9)(a), and their 'substantially equivalent' analogs found in federal law or the law of any state, *id.* § 2901.01(A)(9)(b)." *Denson*, 728 F.3d at 608. We reasoned that the statute was divisible because "the question whether inciting to violence under Ohio law is a crime of violence . . . turns on the particular 'offense of violence' underlying the defendant's inciting-violence conviction."[4] *Id.* at 612. We drew support from Ohio's pattern jury instructions, which required that the jury considering an inciting to violence charge be instructed "on the elements of the applicable offense." *Id.* (citing 2 Ohio Jury Instructions 517.01 cmt.). From these instructions, and from the structure of the statute, we concluded "that the 'offense of violence' a defendant is charged with inciting is an element of [Ohio's inciting to violence statute] that must be proven beyond a reasonable doubt." *Id.*; *see also Burris*, 912 F.3d at 416 (Cole, C.J., concurring in part and dissenting in part) (looking to Ohio's pattern jury instructions to determine whether a statute is divisible); *United States v. Ritchey*, 840 F.3d 310, 320 (6th Cir. 2016) (looking to Michigan pattern jury instructions to determine a statute's divisibility).

Here, Ohio's pattern jury instructions indicate that O.R.C. § 2911.01(A) is divisible by its predicate offenses. Ohio's pattern criminal jury instruction for aggravated robbery states:

> UNDERLYING THEFT OFFENSE. Before you can find that the defendant was (committing) (attempting to commit) (*insert name of applicable theft offense under R.C. 2913.01[K]*) you must find beyond a reasonable doubt that the defendant (*describe each element of applicable theft offense*).

2 CR Ohio Jury Instructions 511.01(A). So to convict for (A)(3) Aggravated Robbery, the government must prove—and a jury must find—the elements of a *particular* predicate theft offense as defined in O.R.C. § 2913.01(K). As in *Denson*, both the structure of the statute and the jury instructions support the conclusion that the particular underlying theft offense is itself an element of (A)(3) Aggravated Robbery.

---

[4]Although *Denson* addressed whether inciting to violence is a crime of violence for purposes of the Sentencing Guidelines, not whether it is a violent felony under the ACCA, "[a] 'crime of violence' under the career-offender provision is interpreted identically to a 'violent felony' under [the] ACCA." *United States v. Johnson*, 675 F.3d 1013, 1016 n.3 (6th Cir. 2012) (alteration in original) (quoting *United States v. Young*, 580 F.3d 373, 380 n.5 (6th Cir. 2009)).

That conclusion is confirmed by looking to Ohio caselaw. *See Mathis*, 136 S. Ct. at 2256 (looking to state caselaw to determine whether a statute is divisible). The Ohio Supreme Court has described the predicate theft offense as an element of (A)(3) Aggravated Robbery. *See State v. Horner*, 935 N.E.2d 26, 35 (Ohio 2010) ("2911.01(A)(3) includes as an element an underlying theft offense."); *State v. Murphy*, 605 N.E.2d 884, 904 (Ohio 1992). Ohio cases reveal that, in practice, the government must prove all the elements of the particular predicate theft offense in order to prove aggravated robbery. For example, in *State v. Tench*, the Ohio Supreme Court recognized that aggravated robbery "must be predicated on the defendant's commission of a 'theft offense.'" 123 N.E.3d 955, 1006–07 (Ohio 2018). And because there was insufficient evidence to convict the defendant on the only theft offense on which the jury was instructed, the Court held that the government could not establish that the defendant had committed aggravated robbery. *Id.* at 1007; *see also State v. Palmer*, 687 N.E.2d 685, 708–09 (Ohio 1997); *State v. Biros*, 678 N.E.2d 891, 911 (Ohio 1997); *State v. Parks*, No. 97049, 2012 WL 1454587, at *3 (Ohio Ct. App. Apr. 26, 2012); *State v. Rojas*, No. 2-03-07, 2003 WL 22228511, at *3 (Ohio Ct. App. Sept. 29, 2003); *State v. Gordon*, No. C-910375, 1992 WL 52723, at *2 (Ohio Ct. App. Mar. 18, 1992).

In response, Wilson offers *State v. Gardner*, 889 N.E.2d 995, 1004 (Ohio 2008), which considered a similar question with respect to aggravated burglary: "whether the jurors must agree unanimously as to which criminal offense a defendant intended to commit during a burglary." A plurality of the Ohio Supreme Court answered "no." Considering the language of the Ohio aggravated burglary statute, the plurality determined that so long as the government proves that the defendant had the "purpose to commit . . . any criminal offense," O.R.C. § 2911.11, it has met its burden of establishing the requisite mens rea for aggravated burglary. *Gardner*, 889 N.E.2d at 1011. Whether the defendant intended to steal, assault, falsely imprison or commit "any [other] criminal offense," inside an occupied structure would not matter because, no matter the offense, the defendant would have formed the critical mens rea. *Id.* Thus, in the case of aggravated burglary, the statute's "language indicates that the emphasis is on the fact that the defendant had the intent to commit a felony and it does not matter which felony formed the basis of that intent." *Id.* at 1009.

(A)(3) Aggravated Robbery differs from aggravated burglary in this respect. Ohio aggravated burglary casts its focus on the defendant's formation of criminal intent, not on the particular crime intended. *Id.* (A)(3) Aggravated Robbery, by contrast, requires the defendant to complete or attempt to complete a "theft offense," as that term is defined in O.R.C. § 2913.01(K). O.R.C. § 2911.01(A). The text of the aggravated robbery statute thus contemplates proof of a particular completed or attempted theft offense.

This conclusion is reinforced by the fact that (A)(3) Aggravated Robbery does not have its own mens rea. Instead, the Ohio Supreme Court has said that the statute "incorporates the mens rea of the underlying theft offense," *State v. Wesson*, 999 N.E.2d 557, 567 (Ohio 2013), and that the government must prove the underlying mens rea in order to secure an aggravated robbery conviction, *Horner*, 935 N.E.2d at 35; *see also State v. Tolliver*, 19 N.E.3d 870, 874 (Ohio 2014) (noting in the context of the similarly-structured robbery statute that "[b]ecause the 'theft offense' element of the robbery statute already required proof of one or more culpable mental states, . . . the state did not need to prove any culpable mental state 'beyond that required for the theft offense'" (quoting *State v. Wharf*, 715 N.E.2d 172, 174 (Ohio 1999)). The mens rea provisions of the various enumerated "theft offenses" are not uniform. *See In re Howard*, 508 N.E.2d 190, 193 (Ohio Ct. App. 1987). It follows, therefore, that the government must prove the particular underlying theft offense in order to secure a conviction for aggravated robbery.

We acknowledge that one panel of the Ohio Court of Appeals has reached a different conclusion in an unpublished opinion. *See State v. Lewis*, No. 2012-L-074, 2013 WL 5225561, at *8 (Ohio Ct. App. Sept. 16, 2013). Citing *Gardner*, the panel in *Lewis* held that "the underlying [theft] offenses are not viewed as actual elements of" aggravated robbery. *Id. Lewis*, however, contains almost no analysis and is out of step with other Ohio caselaw detailed above. As a result, we do not believe *Lewis* reflects the state of the law in Ohio. *Cf. Kingsley Assocs., Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995) (recognizing that when determining state law, a state appellate court decision may be disregarded if "we are presented with persuasive data that the [state] Supreme Court would decide otherwise").

In our view, Ohio law confirms that the enumerated predicate theft offenses in O.R.C. § 2913.01(K) are not merely alternative means of committing a theft offense; instead the particular theft offense "a defendant is charged with" committing "is an element of [(A)(3) Aggravated Robbery] that must be proven beyond a reasonable doubt." *Denson*, 728 F.3d at 612; *see also Mathis*, 136 S. Ct. at 2248. O.R.C. § 2911.01(A) is twice divisible.

Because O.R.C. § 2911.01(A) is twice divisible, we must apply the "modified categorical approach." *Mathis*, 136 S. Ct. at 2249. Using that approach, the "sentencing court" ordinarily would have taken a first look at "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* In this case, that would have entailed determining which predicate "theft offense" formed the basis of Wilson's (A)(3) Aggravated Robbery conviction. The sentencing court would then have "'do[ne] what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case)' with the ACCA . . . elements clause." *Burris*, 912 F.3d at 393 (quoting *Descamps*, 570 U.S. at 257). But because the district court was not presented with the argument that O.R.C. § 2911.01(A) is twice divisible, it had no occasion to consider the relevant documents and determine which predicate "theft offense" formed the basis of Wilson's conviction. We therefore remand the case to the district court so that the parties may develop the record regarding Wilson's (A)(3) Aggravated Robbery conviction and so that the district court may apply the modified categorical approach in the first instance. *See United States v. Walls*, 781 F. App'x 398, 402–03 (6th Cir. 2019).

* * *

We VACATE Wilson's sentence and REMAND to the district court for proceedings consistent with this opinion.