RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0016p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JAMAEL WHITE,

*Defendant-Appellant.*

No. 21-3209

─────────────────

Appeal from the United States District Court for the Southern District of Ohio at Cincinnati.
No. 1:20-cr-00022-1—Michael R. Barrett, District Judge.

Argued:  March 16, 2022

Decided and Filed:  January 31, 2023

Before:  MOORE, WHITE, and BUSH, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Wendy R. Calaway, THE LAW OFFICE OF WENDY R. CALAWAY, CO., L.P.A., Cincinnati, Ohio, for Appellant.  Mary Beth Young, UNITED STATES ATTORNEY'S OFFICE, Columbus, Ohio, for Appellee.  **ON BRIEF:**  Wendy R. Calaway, THE LAW OFFICE OF WENDY R. CALAWAY, CO., L.P.A., Cincinnati, Ohio, for Appellant.  Kevin Koller, UNITED STATES ATTORNEY'S OFFICE, Cincinnati, Ohio, for Appellee.

─────────────────

## OPINION

─────────────────

HELENE N. WHITE, Circuit Judge.  Defendant-Appellant Jamael White challenges his designation as an armed career criminal, arguing that his Ohio aggravated robbery convictions do not qualify as predicate offenses under the Armed Career Criminal Act (ACCA) because the Ohio offense can be committed with a mens rea less than purposeful or knowing conduct.

He also argues that his juvenile adjudication for aggravated robbery cannot serve as an ACCA predicate offense because the government failed to prove the subsection of the statute under which he was adjudicated, and not all subsections delineate violent felonies. Additionally, White challenges the constitutionality of using juvenile adjudications to enhance sentences under the ACCA. Finally, White argues that, to the extent his objections were not adequately preserved, his trial counsel provided constitutionally deficient counsel. For the reasons set forth below, we **VACATE** White's sentence and **REMAND** for resentencing consistent with this opinion.

**I.**

**A.**

On December 7, 2019, police officers in Cincinnati, Ohio, responded to a "shots fired" call in the Over-the-Rhine neighborhood. They recovered approximately eight shell casings and interviewed witnesses. One witness had recorded the incident on video and provided it to the officers, who suspected that White had pointed a gun at a person in the video. Police interviewed that person, who said that he knew White and that White had pointed a gun at his face and demanded his personal property.

Three days later, while surveilling the address White had provided to his parole officer, police observed White leave the house and enter a vehicle being driven by someone else. Police performed a traffic stop on the vehicle and found the driver in possession of a firearm, for which he was later charged. They also found a .40 caliber Hi-Point JCP firearm loaded with nine rounds of ammunition under the seat where White was seated. White later admitted that the Hi-Point firearm belonged to him.

**B.**

A grand jury returned a one-count indictment charging White with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 2. White pleaded guilty pursuant to a written plea agreement in which he agreed that he had "at least two convictions for crimes of violence" under the U.S. Sentencing Guidelines, U.S.S.G. § 2K2.1. R.26, PID 48. The parties noted, however, that they "do not agree on the applicability of

18 U.S.C. § 924(e)," the ACCA's fifteen-year mandatory-minimum sentence for armed career criminals, "and are free to argue their respective positions at sentencing." *Id.* White waived his right to appeal his conviction and sentence, except to the extent his sentence exceeded the statutory maximum.[1] The plea agreement's waiver provision did not, however, bar White from pursuing claims of ineffective assistance of counsel or prosecutorial misconduct.

The Probation Office recommended that the district court find White to be an armed career criminal under 18 U.S.C. § 924(e) based on his having three prior convictions for violent felonies that were committed on different occasions. The final presentence investigation report (PSR) noted that White was adjudicated guilty of aggravated robbery in violation of Ohio Rev. Code § 2911.01,[2] with accompanying specifications for firearm possession and firearm facilitation, in Hamilton County Juvenile Court on August 11, 2005, based on an offense date of June 27, 2005. The PSR also noted that on June 9, 2009, White pleaded guilty and was convicted of six counts of aggravated robbery, in violation of Ohio Rev. Code § 2911.01(A)(1), with specifications for having a firearm on or about his person while committing the offenses, and for possessing, displaying, brandishing, or using a firearm to facilitate the offenses. The PSR noted that the conduct underlying the first four aggravated robberies occurred on March 19, 2009, and the conduct underlying the last two counts occurred on March 22, 2009. "As the offenses occurred on different occasions," the PSR stated, these offenses constituted White's second and third violent felony offenses, respectively. R.33, 97.

---

[1]The government does not argue that this appeal is barred by the waiver.

[2]The Ohio aggravated robbery statute reads, in relevant part:

(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

    (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;

    (2) Have a dangerous ordnance on or about the offender's person or under the offender's control;

    (3) Inflict, or attempt to inflict, serious physical harm on another.

Ohio Rev. Code § 2911.01(A).

The Probation Office calculated an initial Guidelines imprisonment range of 135 months to 168 months, based on a total offense level of 30, which included a three-point reduction for acceptance of responsibility, and a criminal-history category of IV. However, based on its conclusion that White was an armed career criminal, the Probation Office revised his Guidelines imprisonment range to 180 months, with a statutory maximum of life pursuant to 18 U.S.C. § 924(e)(1). White objected to various portions of the PSR. As relevant here, White disagreed that "the provisions of 18 U.S.C. 924(e) apply to this situation," noting that he had reserved his right to argue the inapplicability of the ACCA in the plea agreement. *Id.*, PID 113. White also objected to the paragraph of the PSR describing his juvenile adjudication "for the same reasons as set forth above" and because "the Court is limited in the matters to documents which it can review to determine the application of prior convictions." *Id.* White further objected to the "description of the underlying events" related to the June 2009 aggravated robbery convictions, arguing that they should "count as only one event" and that he had pleaded guilty out of "convenience." *Id.*, PID 114.

The parties filed sentencing memoranda. The government asked the district court to classify White as an armed career criminal, noting that White had "been convicted of seven total armed robberies, the sum of which took place on three separate days and account for three separate incidents of 'violent felonies.'" R.35, PID 127. It emphasized that White's "convictions for aggravated robbery under 2911.01(A)(1) with firearm specifications on March 19 and March 22, 2009[,] qualify as two offenses committed on two occasions for ACCA purposes." *Id.* The government also argued that the Probation Office correctly determined that White's 2005 juvenile adjudication qualified as a violent felony under the ACCA. The government acknowledged that the sentencing entry for White's juvenile adjudication listed only Ohio Rev. Code § 2911.01, without any specific subsection, as well as two firearm specifications. It asserted, however, that the "conviction documents indicate that [White]'s conviction falls under [Ohio Rev. Code] § 2911.01(A)(1) and . . . [White] had a deadly weapon under his control and brandished it." *Id.*, PID 129. The government noted that a conviction under § 2911.01(A)(1) requires the use of a "deadly weapon," and that the two specifications accompanying White's juvenile adjudication indicated that he had used a firearm in committing the offense. These specifications, in turn, meant that White's juvenile adjudication qualified as a

violent felony under the ACCA because his offense "involv[ed] the use or carrying of a firearm, knife, or destructive device."  18 U.S.C. § 924(e)(2)(B).

In his sentencing memorandum, White asserted that "he was righteously convicted of the activities of March 22, 2009; however, the events of March 19, 2009 were not his doing," R.36, PID 134, and that he pleaded guilty because of "the significant penalties he was facing, and the fact that the plea agreement called for concurrent sentences," *id.*, PID 135.  He also argued that his aggravated-robbery convictions relating to the events on March 19 and March 22, 2009, related to a single occasion because there was no intervening arrest, the offenses were charged in a single document, and the sentences were imposed on the same day.  White further argued that, although permissible under federal law, the use of juvenile adjudications to enhance sentences under the ACCA was "inherently unfair" due to the different burdens of proof and procedural standards under Ohio juvenile law and Ohio criminal law, and the different goals of the two systems.  *Id.*, PID 136.  White pressed the same arguments at sentencing.

The district court overruled White's objections and found him to be an armed career criminal.  Based on White's career-offender status, a total offense level of 30, and a criminal-history category of IV, the district court sentenced White to 180 months' imprisonment followed by five years of supervised release.  White timely appealed.

## II.

### A.

White first argues that his Ohio aggravated robbery convictions do not qualify as violent felonies because the physical-force element of the offense can be committed with a mens rea less than purposeful or knowing conduct, in violation of *Borden v. United States*, 141 S. Ct. 1817, 1825 (2021).  We generally review de novo a determination that a conviction qualifies as a "violent felony" under the ACCA.  *United States v. Hockenberry*, 730 F.3d 645, 663 (6th Cir. 2013).  But when the defendant fails to object at sentencing to the district court's application of the ACCA, we review for plain error.  *See United States v. Farrad*, 895 F.3d 859, 886 (6th Cir. 2018).  To prevail under the plain-error standard, a defendant must establish "(1) error, (2) that is plain, and (3) that affects substantial rights."  *United States v. Southers*, 866 F.3d 364, 366

(6th Cir. 2017) (quoting *Johnson v. United States*, 520 U.S. 461, 466–67 (1997)). We may then notice the forfeited error, "but only if (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quoting *Johnson*, 520 U.S. at 466–67); *see also* Fed. R. Crim. P. 52(b) ("A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.").

To avoid plain-error review, "a party must 'objec[t] to the court's action' and also provide 'the grounds for that objection.'" *United States v. Prater*, 766 F.3d 501, 506 (6th Cir. 2014) (quoting Fed. R. Crim. P. 51(b)). To sufficiently articulate an objection, a defendant must "object with that reasonable degree of specificity which would have adequately apprised the trial court of the true basis for his objection." *Id.* (quoting *United States v. Bostic*, 371 F.3d 865, 871 (6th Cir. 2004)).

Here, White objected to his armed-career-criminal designation on the grounds that his 2009 aggravated robbery convictions constituted a single offense, that he did not commit some of the aggravated robberies, and that the use of juvenile adjudications for ACCA sentencing-enhancement purposes is unfair. These objections provided the district court with no way of knowing that White also objected to his armed-career-criminal designation on the ground that aggravated robbery under Ohio law lacks the mens rea required by *Borden.*

White argues that he could not have voiced such an objection because *Borden* had not yet been decided at the time he was sentenced, and therefore de novo review should apply. But plain-error review applies "[e]ven where a new rule of law is at issue." *Henderson v. United States*, 568 U.S. 266, 272 (2013); *see also United States v. Raymore*, 965 F.3d 475, 485 (6th Cir. 2020). Accordingly, we review White's objection for plain error. Plain error, however, is judged by the law at the time of appellate review. *See United States v. Woodruff*, 735 F.3d 445, 450 (6th Cir. 2013).

**B.**

The ACCA imposes a mandatory minimum fifteen-year term of imprisonment for certain firearm offenses, *see* 18 U.S.C. § 922(g), if the defendant "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one

another," *id.* § 924(e)(1). A "violent felony" is "any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult," that "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 924(e)(2)(B)(i). In *Borden*, a plurality of the Supreme Court held that the phrase "use of physical force against the person of another" in the ACCA's elements clause "covers purposeful and knowing acts, but excludes reckless conduct." 141 S. Ct. at 1826. It explained that "[t]he phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual." *Id.* at 1825. "Reckless conduct," the plurality concluded, "is not aimed in that prescribed manner." *Id.*

To determine whether a previous conviction "has as an element the use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i), we use the "categorical approach," *see United States v. Burris*, 912 F.3d 386, 392 (6th Cir. 2019) (en banc). Under this approach, we "look[] only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Taylor v. United States*, 495 U.S. 575, 600 (1990). We then ask "whether every defendant convicted of that state or federal felony *must have* used, attempted to use, or threatened to use physical force against the person of another *in order to have been convicted*, not whether the particular defendant *actually* used, attempted to use, or threatened to use physical force against the person of another *in that particular case*." *Burris*, 912 F.3d at 392. Following *Borden*, we conclude our analysis by asking whether the prior statute of conviction requires the defendant to have used, attempted to use, or threatened to use such physical force with a mens rea greater than recklessness. *Borden*, 141 S. Ct. at 1825.

In *United States v. Patterson*, 853 F.3d 298 (6th Cir. 2017), we held that an aggravated-robbery conviction under Ohio Rev. Code § 2911.01(A)(1) categorically qualifies as a violent felony under the ACCA. *Id.* at 305. The statute provides, in relevant part:

(A)   No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

   (1)   Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]

Ohio Rev. Code § 2911.01(A). We noted the Ohio Supreme Court's statement in *State v. Evans*, 911 N.E.2d 889, 894 (Ohio 2009), that "[o]ne cannot display, brandish, indicate possession of, or use a deadly weapon in the context of committing a theft offense without conveying an implied threat to inflict physical harm. It is the very act of displaying, brandishing, indicating possession, or using the weapon that constitutes the threat to inflict harm because it intimidates the victim into complying." *Patterson*, 853 F.3d at 302–03 (quoting *Evans*, 911 N.E.2d at 894). We also noted the Ohio Supreme Court's observation that a defendant convicted under § 2911.01(A)(1) necessarily commits the "lesser included offense of robbery" under § 2911.02(A)(2), *id.* (citing *Evans*, 911 N.E.2d at 895), which makes it a crime to "[i]nflict, attempt to inflict, or threaten to inflict physical harm on another" while attempting or committing a theft offense, Ohio Rev. Code § 2911.02(A)(2). This was enough, we reasoned, to show that an aggravated-robbery conviction under § 2911.01(A)(1) satisfies the ACCA's elements clause. *Patterson*, 853 F.3d at 303.

White acknowledges that *Patterson* held that convictions of aggravated robbery under § 2911.01(A)(1) are violent felonies under the ACCA but argues that such convictions no longer satisfy the ACCA's elements clause "because the Ohio statute does not contain a *mens rea* requirement of at least knowing or purpose[ful]" as required by *Borden*. Reply Br. at 10. That is, he argues that although *Patterson* decided the question whether Ohio's aggravated robbery statute satisfies the ACCA's elements clause, it did not consider, as *Borden* now requires, whether the offense's force element has a mens rea greater than recklessness—either expressly or as interpreted by the Ohio courts. *See* Hearing Tr. at 8:00–8:26; *see also id.* at 10:34–10:50. We agree.

White is correct that a prior conviction's force element must have a mens rea greater than recklessness for the conviction to qualify as an ACCA predicate offense. *See United States v.*

*Butts*, 40 F.4th 766, 770 (6th Cir. 2022); *accord United States v. Greer*, 20 F.4th 1071, 1075 (5th Cir. 2021) (holding, post-*Borden*, that conviction for assault family violence by impeding breathing or circulation in violation of Texas law "no longer qualifies as a 'crime of violence' because the applicable statutory subsections do not include a force element with a mens rea greater than recklessness"). We have interpreted *Borden* to require that "a violent felony predicate offense . . . criminalize the use of force committed with a mental state that is at least purposeful or knowing." *Butts*, 40 F.4th at 770.

White is also correct that § 2911.01(A)(1) does not, on its face, specify the state of mind that a defendant must have in displaying, brandishing, indicating possession of, or using a deadly weapon.

Relying on the Ohio Supreme Court's decision in *State v. Lester*, 916 N.E.2d 1038 (Ohio 2009), White asserts that aggravated robbery under § 2911.01(A)(1) is a strict-liability offense. *See* Reply Br. at 10. In *Lester*, the defendant argued that his indictment was defective because it did not specify a mens rea element for the aggravated-robbery charge. 916 N.E.2d at 1039. The Ohio Court of Appeals reversed his conviction on that ground, *id.*, but the Ohio Supreme Court disagreed, holding that the state was not required to charge a mens rea for the deadly-weapon element of the aggravated-robbery offense, *id.* at 1039, 1044. In reaching that conclusion, the court commented that "[w]e are persuaded that the General Assembly, by not specifying a mens rea in [Ohio Rev. Code] 2911.01(A)(1), plainly indicated its purpose to impose strict liability as to the element of displaying, brandishing, indicating possession of, or using a deadly weapon." *Id.* at 1044.

The government responds that *Lester* is inapposite because it was concerned "with whether [the deadly-weapon element of § 2911.01(A)(1)] triggered Ohio's default culpability provision, [Ohio Rev. Code § 2901.21(B)] which, under then-applicable Ohio precedent, would have required explicitly charging recklessness with regard to the element." Appellee Br. at 22. The government relies instead on *Evans*, in which the Ohio Supreme Court "directly addressed the meaning of the [deadly-weapon element]'s substantive requirements." *Id.* at 23. In *Evans*, the defendant was charged with aggravated robbery in violation of § 2911.01(A)(1). 911 N.E.2d at 891. At trial, the court granted the defendant's motion for acquittal, finding that the state

failed to present sufficient evidence that the defendant possessed a weapon when he committed the offense, but the court also found the defendant guilty of robbery as a lesser-included offense of aggravated robbery. *Id.* The defendant appealed, arguing that his conviction of robbery, for which he was not indicted, was unconstitutional because robbery is not a lesser-included offense of aggravated robbery. *Id.* The Ohio Supreme Court disagreed, explaining that "[r]obbery . . . requires the state to prove a threat to inflict physical harm," and "[o]ne cannot display, brandish, indicate possession of, or use a deadly weapon in the context of committing a theft offense without conveying an implied threat to inflict physical harm." *Id.* at 891, 894.

We are not persuaded by the government's attempt to distinguish *Lester*. To be sure, *Evans* and *Patterson* establish that displaying, brandishing, indicating possession of, or using a deadly weapon during a robbery "convey[s] an implied threat to inflict physical harm." *Evans* at 894; *Patterson*, 853 F.3d at 302. But it does not follow that the implied threat is necessarily accomplished with a mens rea greater than recklessness. And nothing in *Evans* contradicts or casts doubt on *Lester*'s core holding that the deadly-weapon element of aggravated robbery does not have a culpability requirement, a point the Ohio Supreme Court has reaffirmed on multiple occasions. *See State v. Wesson*, 999 N.E.2d 557, 567 (Ohio 2013); *State v. Horner*, 935 N.E.2d 26, 34 (Ohio 2010).[3]

In sum, *Patterson* and *Evans* establish that Ohio aggravated robbery under § 2911.01(A)(1) has as an element the use, attempted use or threatened use of physical force, but neither addressed the mens rea with which such force must be used, attempted, or threatened. In contrast, Ohio case law holds that there is no culpability requirement for the force element of aggravated robbery.

---

[3]Although *Lester* and some subsequent cases use the term "strict liability" and apply it as an alternative to finding that the statutory default mens rea of recklessness applies under Ohio Rev. Code § 2901.21(B), the Ohio Supreme Court has subsequently made clear, in *State v. Tolliver*, that § 2901.21(B) does not apply to this situation at all because the robbery offenses each include an underlying theft offense, which has its own mens rea. So the offense as a whole does not lack a culpability provision. 19 N.E.3d 870, 874 (Ohio 2014). Further, *Tolliver* makes clear that Ohio law does not require that the underlying mens rea be shown as to each element of an offense, and it is permissible for some elements to have no culpability requirement. *Id.* at 875; *see Butts* at 770–71.

**C.**

But this does not end the inquiry. "Without a state of mind linked to the physical injury element of a [§ 2911.01(A)(1)] conviction, we must ask whether a theft offense underlying the conviction necessarily involved," *Butts*, 40 F.4th at 771, the knowing or purposeful "use, attempted use, or threatened use of physical force against the person of another," 18 U.S.C. § 924(e)(2)(B)(i); *see also Horner*, 935 N.E.2d at 33 (stating that "no intent beyond that required for the theft offense must be proven"); *Wesson*, 999 N.E.2d at 567 (holding that Ohio Rev. Code "2911.01(A)(1) . . . incorporates the mens rea of the underlying theft offense").

If the underlying theft offense does not require the knowing or purposeful use, attempted use, or threatened use of force when a person displays, brandishes, indicates possession of, or uses a deadly weapon, then a conviction under § 2911.01(A)(1) does not qualify as a violent felony under the categorical approach. *See Butts*, 40 F.4th at 771 (applying similar analysis to conviction under § 2911.02(A)(2)). A "theft offense" is any offense defined in Ohio Rev. Code § 2913.01, *see* Ohio Rev. Code § 2911.01(A), which in turn "lists more than 31 theft offenses," *Butts*, 40 F.4th at 771. Because § 2911.01(A)'s theft element is divisible, *see United States v. Wilson*, 978 F.3d 990, 999 (6th Cir. 2020), we look to the *Shepard* documents to determine which theft offenses served as the predicates for White's aggravated-robbery convictions, *see Butts*, 40 F.4th at 771. "We then ask whether th[ese] theft conviction[s] could involve the reckless use, attempted use, or threatened use of force against the person of another." *Id.*

Here, the indictment charging White's aggravated-robbery offenses committed on March 19 and March 22, 2009[4] alleges violations of § 2911.01(A)(1) and the lesser-included offense of § 2911.01(A)(2). The indictment refers generally to § 2913.01—which provides the definition of "theft offense" listing thirty-one statutory provisions—but no specific theft provision is

---

[4]"On appeal, we may take judicial notice of state-court documents that describe the elements of a defendant's underlying conviction and are not subject to reasonable dispute." *Butts*, 40 F.4th at 771 n.5.

mentioned in the indictment.  It is equally unclear which theft offense served as the predicate for White's juvenile adjudication.**5**

In sum, on this record, reference to the underlying theft offenses adds nothing to our analysis, and we focus again on § 2911.01(A)(1) and the absence of a knowing or purposeful mens rea.**6**

**D.**

The government responds that in applying the categorical approach, courts should not "apply 'legal imagination to the state offense; there must be a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the conduct described in the elements clause.'"  Appellee Br. at 15-16 (citing *Wilson*, 978 F.3d at 993, 996).

White points to *State v. Knight*, No. 2003-CA-14, 2004 WL 830043 (Ohio Ct. App. 2004), to show that Ohio courts are not concerned with the mens rea with which a defendant displays, brandishes, indicates possession of, or uses a deadly weapon.  But, at least on its face, *Knight* deals with a different issue—the sufficiency of the evidence that the defendant possessed a deadly weapon and indicated that possession.  *Id.* at *2.

Knight was convicted of two counts of aggravated robbery in violation of § 2911.01(A)(1).  *Id.* at *1.  He challenged one of the convictions, arguing that there was insufficient evidence that he possessed a deadly weapon while committing the robbery or implied that he had one, *id.* at *2, and that the jury was improperly permitted "to infer that Knight possessed a deadly weapon without his displaying, brandishing or using a gun and without any explicit threat indicating that he had a gun," *id.* at *4.  The victim testified that

---

**5**An online search did not locate the docket for White's juvenile adjudication, and it was not placed separately in the record below.  Nor does the state-court judicial entry quoted by the PSR indicate the theft offense underlying White's juvenile adjudication.

**6**Because § 2911.01 is "twice divisible[,] once by recognizing (A)(1), (A)(2), and (A)(3) as separate crimes, and again by recognizing each of the predicate theft offenses as separate crimes," *Wilson*, 978 F.3d at 996, we cannot simply "ask whether a conviction under *any* of Ohio's theft offenses could involve a negligent or reckless use of force," *Butts*, 40 F.4th at 771.

Knight had both hands in his pockets when he entered the store and said only "open the register"; that he "just came up to the counter and he had both hands in his pocket, and the right hand just—was just—was out and looked like he had a small gun in his pocket." *Id.* The victim further testified that Knight "did not display a gun when he took both hands out of [his] pockets to grab the money from the cash register, thus causing her to question whether he, in fact, had a gun." *Id.* at *5. The victim opened the cash-register drawer only "because she had believed that [the defendant] possessed a gun." *Id.* In upholding Knight's conviction, the Ohio Court of Appeals held that the jury's finding that Knight had a gun was sufficiently supported by testimony that the defendant's "right hand was 'out' compared to his other hand, thus suggesting a concealed gun," and that the defendant "obtained the money from [the victim] based on her belief that he was armed with a gun[,] a belief that was based on [the defendant]'s actions." *Id.*

White argues that *Knight* stands for the proposition that Ohio would apply § 2911.01(A)(1) to situations where "there is no evidence that the [defendant] actually intended to commit this violence that the ACCA is concerned with." Oral Argument at 13:00–13:11.**[7]** On its face, *Knight* merely instructs that a jury may infer "both a weapon's existence and its operability . . . from the facts and circumstances." 2004 WL 830043, at *4. The Ohio Court of Appeals held, on the facts presented, that testimony that the victim believed the defendant possessed a weapon based on the way his hands were positioned was sufficient circumstantial evidence to support an inference that the defendant in fact possessed a weapon. *Id.* at *5. *Knight* did not explicitly consider or decide whether aggravated robbery under § 2911.01(A)(1) can be committed recklessly.

Still, Ohio law is clear beyond doubt that there is no mens rea requirement applicable to a defendant's displaying, brandishing, indication of possession of, or use of a deadly weapon in committing, attempting to commit, or fleeing from the underlying theft offense. This legal principle is so engrained in Ohio caselaw that there is more than a reasonable probability that Ohio courts would not recognize as a defense to an aggravated-robbery charge that although the

---

**[7]**The audio recording of the oral argument is publicly available at: https://www.opn.ca6.uscourts.gov/internet/court_audio/aud2.php?link=audio/03-16-2022%20-%20Wednesday/21-3209%20USA%20v%20Jamael%20White mp3&name=21-3209%20USA%20v%20Jamael%20White.

defendant displayed, brandished, indicated possession of, or used a deadly weapon during the underlying theft offense, the defendant did so without knowledge and intent, but only recklessly. *See, e.g.*, *State v. Branigan*, 2010-Ohio-5745, 2010 WL 4867679, at *4-7 (Ohio Ct. App. 2010) (affirming § 2911.01(A)(1) aggravated robbery conviction where "indictment alleged that [defendant] recklessly displayed, brandished, or used a deadly weapon" because "the state's burden of proof was increased by including the reckless element in the indictment").

Although mens rea was not directly at issue in *Knight*, the factual circumstances are nevertheless instructive in the sense that the court was willing to hold the defendant criminally liable for indicating possession of a weapon based only on the way he held his hands and the impression he conveyed to the victim, circumstances that could clearly be the result of recklessness and not intent. It requires no flight of legal fancy to conclude that a hypothetical defendant, in committing or attempting to commit a theft offense, or fleeing after either, might display, brandish, indicate possession of, or use a deadly weapon without knowingly or purposely doing so, but only recklessly or negligently, and that the Ohio courts would sustain convictions under § 2911.01(A)(1) under such circumstances.

For these reasons, applying the law as it exists at the time of our review, *i.e.*, applying *Borden*, we conclude that on the record before it, the district court plainly erred in finding that White's aggravated-robbery convictions qualify as violent felonies. We note that this conclusion is partially dependent on the circumstance that the underlying theft offenses have not been identified nor shown to have as an element the knowing or purposeful "use, attempted use, or threatened use of physical force against the person of another." If the underlying theft offense were shown to have such an element, our conclusion would be different.

**III.**

For the reasons set forth above, we vacate White's sentence and remand for resentencing consistent with this opinion.